# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| SOURCEAMERICA, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-893 (TSE/IDD) |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |

## PLAINTIFFS' SURREPLY
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs SourceAmerica and Lakeview submit this proposed surreply brief to respond to issues first raised or materially expounded upon in the Government's reply brief in support of its motion to dismiss. Namely, the Government now concedes the arbitrators erred by "fail[ing] to act on SourceAmerica and Lakeview's requests to participate" in the Randolph-Sheppard Act ("RSA") arbitration which rendered the Fort Riley award challenged in this suit, but argues that any such error was "harmless." The Army's own arbitrator, General Carey (Ret.) had concluded of the arbitration, "I cannot escape my conclusions based on [the Army's] arguments (nor based [on] my own observations) that the proceedings lacked fundamental fairness." Compl. Ex. W at 22. The Government compounds that error with its position here.

What is most striking about the Government's reply is how every point it raises regarding Plaintiffs' attempts to intervene in the arbitration has already been refuted—by the Government. This Court should not let the Government play fast and loose with the positions it takes in

agency proceedings and in subsequent litigation (failing to even acknowledge reversals in position) under any circumstances, much less on a motion to dismiss.

SourceAmerica and Lakeview were unlawfully denied participation in the Fort Riley RSA arbitration proceedings, a cognizable error pursuant to Section 555(b) of the APA. Opp. to MTD at 20-22; Compl. ¶¶ 129-46. Defendants now concede error. *See* Reply Br. at 11-12. Defendants no longer dispute that SourceAmerica and Lakeview properly sought to intervene in the arbitration proceedings. They admit that the arbitrators "fail[ed] to act" on SourceAmerica and Lakeview's intervention requests. *Id.* at 11. Defendants also do not dispute that SourceAmerica and Lakeview satisfy Section 555(b)'s terms: that they are "interested person[s]" within the definition of 555(b), and that their intervention would not interfere with "the orderly conduct of public business." *See* Reply Br. at 11-12.

Nonetheless, Defendants now say none of that matters. Incredibly, they argue that any error by the arbitrators in refusing to rule on SourceAmerica and Lakeview's intervention requests would be "harmless" because, if the arbitrators had ruled on them, they would have "correctly" "denied the request as incompatible with the RSA arbitration scheme." *Id.* at 11. However, an agency abuses its discretion where it fails to even conduct Section 555(b)'s inquiry—whether on the erroneous belief about what that standard is, or just through plain neglect, as happened here. *See Animal Legal Defense Fund, Inc. v. Vilsack*, 237 F. Supp. 3d 15, 23-24 (D.D.C. 2017) (vacating and remanding "for consideration of ALDF's motion in light of the factors relevant to participation under APA § 555(b)"). At bottom, Defendants argue that SourceAmerica and Lakeview have not shown prejudice, as "[f]urther evidence or argument from SourceAmerica and Lakeview on JWOD issues would not have led to a different decision" on whether the RSA governed the Fort Riley contract. Reply Br. at 11-12. If accepted, that ex

post justification would render Section 555(b) a dead letter.  In this case, this justification is

untenable.  In February, the Government argued the opposite in the underlying arbitration it now

twists itself into knots to protect:  it argued that SourceAmerica and Lakeview had material

evidence which would have resulted in a different outcome in the arbitration, and its exclusion

was arbitrary, capricious, and prejudicial.  *See* Compl. Ex. X.

According to the Government in February, SourceAmerica, Lakeview, and the

AbilityOne Commission had unique evidence that would have shown that the RSA did not cover

the Fort Riley contract, and instead, the AbilityOne Program covered it.  The Government argued

that not only did SourceAmerica, Lakeview, and AbilityOne Commission witnesses have

"relevant and material" evidence,[1] the Government argued that their participation would have led

the arbitrators to a different outcome if the arbitrators did not exclude their testimony:

- "The Panel Chair's ruling both precluded [the Army] from showing that the [dining facility] services were lawfully covered by the AbilityOne Program; and, it prevented [the Army] from showing that the RSA *did not* cover the DFA services."

- "Had the Panel Chair permitted the testimony . . . the evidence would clarify that the Army's requirement [for dining facility services] fell squarely within another statutory program, the Javits-Wagner-O'Day ('JWOD') Act, now called AbilityOne."

Compl. Ex. X at 4 (emphasis in original).

According to the Government in February, "the Panel Chair did not appreciate core

elements of [the Army's] position," including that "if the [dining facility] services lawfully fell

under the AbilityOne Program, they did not fall under RSA, and vice versa."  *Id.* at 7.  "[T]he

Panel Chair expressed confusion regarding the role of SourceAmerica and the AbilityOne

---

[1] *E.g.*, Compl. Ex. X at 3 ("relevant and material evidence"); *id.* at 4 ("relevant testimony"); *id.* at 5 (arguing that the arbitrators previously had recognized Lakeview's witness as "essential for the defense"); *id.* at 6 ("this evidence was material").

Program and she had several questions about these organizations." *Id.* Defendants now argue

that the Army adequately represented SourceAmerica and Lakeview's interests. Reply Br. at 12.

Not so. Again, the Government's own words refute this argument—the Government argued that

SourceAmerica, Lakeview, and the AbilityOne Commission were uniquely qualified to explain

how the Fort Riley contract did not fall under the RSA because it fell under the AbilityOne

Program:

- "These witnesses were the most knowledgeable to explain their respective roles and factual involvement of these organizations in . . . the application of the JWOD Act to this procurement."

- "[T]he AbilityOne Commission's responsibilities included determining whether the JWOD covered the services in question, and thus such evidence was highly probative as to the panel's determination whether the RSA covered these [dining facility] services."

Compl. Ex. X at 7. The Army also could not represent SourceAmerica and Lakeview's interests

because it needed to balance competing institutional interests and policy concerns in conducting

the procurement; by contrast, SourceAmerica is one of two "central nonprofit agencies" tasked

by statute with representing the interests of the AbilityOne Program and qualified nonprofit

agencies such as Lakeview. *See* Compl. ¶¶ 28, 29, 140 & Compl. Ex. P at 3 n.4.

And, according to the Government in February, by excluding the SourceAmerica,

Lakeview and AbilityOne evidence, the arbitrators acted arbitrarily, showing that the arbitration

was fundamentally flawed. The ruling was "an absolute abuse of discretion," the Government

argued, "which prevented [the Army] from being able to show that Lakeview Center, Inc. should

be the lawful awardee of the [Fort Riley] DFA services contract."[2] The Government further

---

[2] *E.g.*, Compl. Ex. X at 3 ("the Panel Chair arbitrarily excluded relevant and material evidence of [the Army], and the arbitration fell well below the threshold of a fair and impartial proceeding"); *id.* at 4 (arbitrators' "arbitrary decision to not hear this testimony prevented the panel from

argued that it "relied on these witnesses to present a defense and *suffered prejudice* when it was not allowed to offer their testimony at the hearing." *Id.* at 4. SourceAmerica and Lakeview's wholesale exclusion was even more prejudicial to them, and thus, the arbitrators' failure to even consider their intervention requests was reversible error.

Finally, Defendants now argue that SourceAmerica and Lakeview "all but conceded" that *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), favors interpreting the RSA so that only state agencies can seek review of RSA arbitration decisions, and that they "do not present any reasons why [*Block*] might be distinguishable." Reply Br. at 5. That is wrong, and it demands correction. *See* Opp. to MTD at 14-15. *Block* did not involve parties who were never able to present their case to any decision-maker, agency or court, whose rights were determined *in absentia*. *Id.* at 14-15; *Block*, 467 U.S. at 342 (public "provided an opportunity for public hearing and comment"); *id.* at 346-47 (handlers able to participate in development of orders and seek review). Neither did *Block* involve parties who were foreclosed from vindicating their rights under a competing statutory program, such as the JWOD Act here. Opp. to MTD at 14-15; *Block*, 467 U.S. at 344-45. Thus, the Court in *Block* did not have to construe the statute to avoid constitutional infirmities. Opp. to MTD at 15. And contrary to Defendants' new argument that *Block* warrants dismissal of "all of plaintiffs' APA claims" (Reply Br. at 5), *Block* only relates to Count III: it does not bear on Plaintiffs' constitutional claims as Defendants concede (Counts V and VI), nor on claims predicated on the JWOD Act, APA, or other law besides the RSA (Counts II, IV, and VI). Opp. to MTD at 11-14.

The Court should deny Defendants' motion to dismiss.

---

hearing evidence to establish that [the Army's] DFA requirement did not fall within the purview of RSA"); *id.* ("the Panel Chair abused her discretion and failed to ensure a fair hearing").

Dated:  November 27, 2017

Respectfully submitted,

/s/ Sonia Tabriz
Sonia Tabriz (VA Bar # 85822)
Craig A. Holman*
Robert A. DeRise*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Phone: +1 202.942.5000
Fax: +1 202.942.5999
sonia.tabriz@apks.com
craig.holman@apks.com
robert.derise@apks.com

*Counsel for Plaintiffs SourceAmerica and
Lakeview Center, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2017, I caused a true and accurate copy of the foregoing to be served via the Court's CM/EMF system, which will serve the filing via e-mail notification to all counsel of record.

/s/ Sonia Tabriz
Sonia Tabriz