**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SOURCEAMERICA, et al.,** )<br>)<br>     **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**UNITED STATES DEPARTMENT OF** )<br>**EDUCATION, et al.,** )<br>)<br>     **Defendants** ) | **Case No. 1:17-cv-893 (TSE/IDD)** |

<u>**FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO INTERVENOR'S
SUMMARY JUDGMENT BRIEF**</u>

## PRELIMINARY STATEMENT

For the reasons explained in the federal defendants' first summary judgment memorandum,[1] the Court should dismiss this case without reviewing the arbitration decision, because the Randolph-Sheppard Act, 20 U.S.C. §§ 107–107f, permits only designated State licensing agencies to bring federal agencies to arbitration and later seek judicial review of the ensuing arbitration decisions. If the Court proceeds with review of the arbitration decision, however, then the Court should find that the panel erred in ruling that the Army's actions violated the Randolph-Sheppard Act and should remand for a corrected decision, without issuing injunctive relief.

In this brief the Government responds to the arguments made in the first summary judgment brief filed by intervenor State of Kansas[2] and the second summary judgment brief filed by plaintiffs SourceAmerica and Lakeview Center, Inc.[3] None of the arguments in either of those briefs points to any error in the Government's arguments.

## ARGUMENT

**I.    The plaintiffs' claims should be dismissed because only a Randolph-Sheppard Act State licensing agency may seek judicial review of an arbitration panel decision.**

As explained in the federal defendants' first memorandum, the Randolph-Sheppard Act permits only designated State licensing agencies to bring federal agencies to arbitration and later seek judicial review of the ensuing arbitration decisions. The plaintiffs may not seek judicial review because they do not fall within the "zone of interests" of the pertinent provisions of the

---

[1] Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Cross Mot. for Summ. J. (Defs.' Mem.), ECF Nos. 71, 73.

[2] Br. in Supp. of Intervenor State of Kansas' Resp. to Pls.' Mot. for Summ. J., and State of Kansas' Mot. for Summ. J. Against Pls. (Kansas Br.), ECF No. 69.

[3] Reply Mem. of Law in Supp. of Pls.' Mot. for Summ. J. and in Opp'n to Defs.' and Intervenor's Cross-Mots. for Summ. J. (Pls.' Reply), ECF No. 74.

Randolph-Sheppard Act, because the Randolph-Sheppard Act impliedly precludes requests for judicial review from parties other than Randolph-Sheppard Act State licensing agencies and vendors, and because a bid protest action under 28 U.S.C. § 1491(b) provides another adequate remedy.

### A.   SourceAmerica and Lakeview do not fall within the zone of interests protected by the Randolph-Sheppard Act.

SourceAmerica and Lakeview cannot seek review under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, because they have not shown that their "grievance" falls "within the 'zone of interests' to be protected or regulated by the statute or the constitutional guarantee in question," *Taubman Realty Grp. Ltd. v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003) (citing *Pye v. United States*, 269 F.3d 459, 466–67 (4th Cir. 2001)). *See* Defs.' Mem. 15–17.

The federal defendants noted that the only provisions properly considered in the zone-of-interests analysis are the arbitration provisions of the Randolph-Sheppard Act, because those provisions form the sole basis for the arbitration decision. *See* Defs.' Mem. 16–17. The plaintiffs argue that the Court should also consider the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501–8506, pointing to language in *Bennett v. Spear*, 520 U.S. 154 (1997), stating that the zone-of-interests analysis examines "the particular provision of law *upon which the plaintiff relies*" or "the specific provision which [the plaintiff] alleged had been violated." Pls.' Reply 28–29 (alteration in original) (quoting *Bennett*, 520 U.S. at 175–76). The language in *Bennett* does not weigh in favor of the plaintiffs here. *Bennett* involved a situation where the statute relied upon by the plaintiffs—the Endangered Species Act, 16 U.S.C. § 1531–1544—was the same statute that governed the challenged agency action. *See Bennett*, 520 U.S. at 175. The case does not suggest that the zone-of-interests analysis should take into account a separate statute wholly unconnected to the provision governing the agency's action. *See Grand Council of the Crees (of Que.) v.*

*FERC*, 198 F.3d 950, 956 (D.C. Cir. 2000) ("We . . . focus on the provision under which the [agency] acted here . . . ."); *Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) ("[I]n considering whether plaintiffs are authorized to sue under [the APA] we look to whether they fall within the zone of interests sought to be protected by the substantive statute pursuant to which the [defendant agency] acted . . . ."). As explained in the federal defendants' first memorandum, the Javits-Wagner-O'Day Act has no bearing on a Randolph-Sheppard Act arbitration decision— the Javits-Wagner-O'Day Act imposes no duties on Randolph-Sheppard Act arbitration panels, and Randolph-Sheppard Act arbitration panels have no authority to resolve Javits-Wagner-O'Day Act issues. *See* Defs.' Mem. 16, 32–33.

The plaintiffs also do not fall within the zone of interests of the substantive provisions of the Randolph-Sheppard Act. The Randolph-Sheppard Act is designed for the benefit of participating blind vendors and State licensing agencies. The plaintiffs here do not, and do not seek to, participate in the Randolph-Sheppard Act program. They also do not directly compete with Randolph-Sheppard Act vendors, as they contend they are entitled to a contract under a separate statutory scheme.

### B. The Randolph-Sheppard Act arbitration scheme permits only State licensing agencies to seek judicial review of arbitration decisions.

The Government also explained that the Randolph-Sheppard Act arbitration provisions impliedly preclude parties other than Randolph-Sheppard Act State licensing agencies and blind vendors from seeking judicial review of Randolph-Sheppard Act arbitration decisions. The Government pointed to a case in which the Supreme Court found that review was precluded under very similar circumstances, *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984). Defs.' Mem. 17–19.

The plaintiffs do not explain how *Block* can be distinguished from this case; instead, they rely on the general principle that courts presume that administrative action is subject to judicial review. Pls.' Reply 30–31. But as the Government noted in its first summary judgment brief, the Supreme Court explained in *Block* that the presumption is defeated when "congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Block*, 467 U.S. at 351 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 157 (1970)). That includes the kind of situation presented in *Block* and in this case, where "a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons" and "judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id.* at 349. *Block* favors reading the Randolph-Sheppard Act in a way that limits judicial review to State licensing agencies and blind vendors. And it proves that the plaintiffs are plainly wrong when they suggest that "specific[] statutory language" is necessary to preclude judicial review, Pls.' Reply 32.

The plaintiffs also argue that the Randolph-Sheppard Act should not be interpreted to confine judicial review to State licensing agencies because such a restriction would be unconstitutional. Pls.' Reply 31 n.12. There is no constitutional problem. A Randolph-Sheppard Act arbitration panel has no power to determine the rights of persons other than the parties to an arbitration and, under current Fourth Circuit law, cannot grant equitable relief or otherwise dictate how an agency should comply with the Randolph-Sheppard Act. *See* Defs.' Mem. 6, 32–33. The arbitration decision at issue in this case did not adjudicate SourceAmerica's or Lakeview's rights and, as explained further below, *see infra* pp. 16–19, did not deprive SourceAmerica or Lakeview of any constitutionally protected property right.

**C.      Lakeview cannot seek judicial review under the APA because there is another
          adequate remedy in the form of a bid protest action.**

The Government further explained that Lakeview cannot seek review of the arbitration

decision under the APA because APA review is available only when "there is no other adequate

remedy in a court," 5 U.S.C. § 704. If the Army were to move forward with a procurement that

Lakeview believes is unlawful, another remedy would be available to Lakeview in the form of a

bid protest action under the Administrative Dispute Resolution Act, 28 U.S.C. § 1491(b). *See*

Defs.' Mem. 19–21.

The plaintiffs complain that it is not clear a bid protest would be available to Lakeview

now. As the Government stated earlier, the Government does not contend that the plaintiffs'

present suit would be more properly brought as a bid protest action before the Court of Federal

Claims under 28 U.S.C. § 1491(b)—in fact, this suit, as framed in plaintiffs' present complaint,

most likely would *not* fall within the bid protest jurisdiction of the Court of Federal Claims. *See*

Defs.' Reply Mem. in Supp. of Their Mot. to Dismiss 8, ECF No. 17. Whether the Court of

Federal Claims would have jurisdiction over a different or future suit would of course depend on

the facts and the nature of the plaintiffs' complaint in that future suit. But there is no obvious

reason why Lakeview would not be able to bring a later bid protest action against a procurement

by the Army, and Lakeview has not pointed to any reason.

The Government explained in its first summary judgment brief that the cases cited in the

Court's March 2018 ruling, *Colorado Department of Human Services v. United States*, 74 Fed.

Cl. 339 (Fed. Cl. 2006), and *Kansas ex rel. Kansas Department of Children and Family Services

v. SourceAmerica*, 874 F.3d 1226 (10th Cir. 2017), do not suggest that the Court of Federal

Claims would lack jurisdiction over a bid protest action. Those two cases addressed whether

plaintiffs that are Randolph-Sheppard Act State licensing agencies can bring bid protest actions

in the Court of Federal Claims without first proceeding through the Randolph-Sheppard Act arbitration process, and the related question of whether a Randolph-Sheppard Act State licensing agency can obtain judicial review of an arbitration decision in the Court of Federal Claims. The reasoning of *Colorado Department of Human Services* and *Kansas* has no bearing on this case, where the plaintiffs are not Randolph-Sheppard Act State licensing agencies and have "no rights under the Randolph-Sheppard Act," *Colo. Dep't of Human Servs.*, 74 Fed. Cl. at 345. The additional case cited in the plaintiffs' second summary judgment brief, *Johnson v. United States*, No. EP-14-CV-00317-DCG, 2014 WL 12540469 (W.D. Tex. Sept. 12, 2014), is inapposite for the same reason. *Johnson*, like *Colorado Department of Human Services* and *Kansas*, addressed whether a Randolph-Sheppard Act State licensing agency may bring suit in the Court of Federal Claims without first pursuing arbitration. *See id.* at *4 ("[T]he RSA provides a specific and comprehensive scheme for the resolution of disputes between a federal agency and *a state licensing agency*." (emphasis added) (citing *Colo. Dep't of Human Servs.*, 74 Fed. Cl. at 345)).

Plaintiffs also point again to the general presumption that administrative action is subject to judicial review. But interpreting a statute in a way that results in judicial review being simply delayed or directed to a different forum does not implicate this presumption. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 & n.8 (1994) (noting that the presumption in favor of judicial review did not suggest that a statute should be read to permit immediate district court review instead of limiting claimants to "delayed judicial review" in the Court of Appeals).

The Government has not argued that § 704 bars claims by SourceAmerica, but SourceAmerica's claims are barred for the other reasons discussed in the federal defendants' opening memorandum and this memorandum.

II.     **If the plaintiffs' claims are not dismissed, the Court should set aside the arbitration decision and remand for a new decision but should not enter injunctive relief.**

A.      **The Randolph-Sheppard Act does not apply to contracts for ancillary services in support of a dining facility operated by Army personnel.**

For the reasons explained above, the Court should not review the arbitration decision, but if the Court does review the arbitration decision, it should find that the panel erred in ruling that the Army violated the Randolph-Sheppard Act. As explained in the Government's first memorandum, the Randolph-Sheppard Act does not apply to contracts for ancillary services in support of a dining facility operated by Army personnel. Kansas has not offered any persuasive arguments in support of the arbitration panel's reading of the statute.

Kansas is correct that the Western District of Texas held in a March 2018 opinion that the terms of the Randolph-Sheppard Act do not clearly indicate that the Act is inapplicable to contracts for DFA services. Kansas Br. 10 (discussing *Tex. Workforce Comm'n v. U.S. Dep't of Educ.*, No. EP-17-CV-00026-FM (W.D. Tex. Mar. 28, 2018), ECF No. 31, https://ecf.txwd .uscourts.gov/doc1/181119811649 (ruling on motion to dismiss)). The court's analysis of the issue was incomplete, however; it focused primarily on the dictionary meaning of the terms "operate" and "operation" and did not take full account of the context in which those terms are used in the Randolph-Sheppard Act. *See* Defs.' Mem. 23–24. The March 2018 decision by the Western District of Texas was a ruling on a motion to dismiss, not a final ruling, and the court may yet revisit its analysis.

Kansas also points to a ruling in *Washington State Department of Services for the Blind v. United States*, 58 Fed. Cl. 781 (Fed. Cl. 2003), in which the Court of Federal Claims held that there was "no legally-required answer to the question of whether a DFA services contract" was subject to the Randolph-Sheppard Act. *Id.* at 796, *discussed in* Kansas Br. 20. The Government disagrees with that court's analysis. As explained in the federal defendants' first memorandum, a

close analysis of the terms "operation" and "operating" and how they are used in the Randolph-Sheppard Act suggests that the statute is inapplicable when the contractor is providing ancillary services in support of the operation of a cafeteria that do not include direct involvement in the preparation, service, or sale of food. *See* Defs.' Mem. 22–24.

Kansas, like the arbitration panel, also relies on the reference in 34 C.F.R. § 395.33(c), to "[a]ll contracts . . . pertaining to the operation of cafeterias on Federal property." Kansas Br. 3, 12 (*quoting id.*). But as the federal defendants have explained, that provision does not address the scope of the Randolph-Sheppard Act priority. *See* Defs.' Mem. 25; *see also Tex. Workforce Comm'n*, slip op. at 21–22 (holding that the phrase "pertaining to the operation of cafeterias" in 34 C.F.R. § 395.33(c) does not define the scope of the Randolph-Sheppard Act priority); *Wash. State Dep't of Servs. for the Blind*, 58 Fed. Cl. at 790 (same).

Kansas argues that the "no-poaching" provision of the John Warner National Defense Authorization Act for Fiscal Year 2007 (JWA), Pub L. No. 109-364, § 856(a), 120 Stat. 2083, 2347 (2006), https://www.govinfo.gov/content/pkg/PLAW-109publ364/pdf/PLAW-109publ364 .pdf, suggests that the Randolph-Sheppard Act applies to contracts for DFA services. The JWA no-poaching provision removes some contracts for "services supporting the operation of a military dining facility" from the reach of the Randolph-Sheppard Act, and Kansas argues that this suggests that contracts for other "services supporting the operation of a military dining facility" are subject to the Randolph-Sheppard Act. Kansas Br. 21. This analysis is flawed. The Supreme Court has explained that evidence of how a later Congress may have understood a provision enacted by an earlier Congress is of limited value in determining the meaning of the provision. *See, e.g.*, *United States v. Texas*, 507 U.S. 529, 535 n.4 (1993) (holding that a statutory amendment authorizing prejudgment interest did not show that prejudgment interest was

unavailable in situations not covered by the amendment, and noting that "subsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress" (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990))). The language employed by the 109th Congress in the JWA does not shed light on how the Court should interpret provisions of the Randolph-Sheppard Act enacted by earlier Congresses.

Kansas also relies on the March 5, 2018, letter from the Secretary of Education to a Member of Congress in which the Secretary cited the arbitration panel decision at issue in this case and appeared to endorse the arbitration panel's analysis at least in part. As explained in the Government's first memorandum, an interpretation of a statute stated in a letter from the Secretary to a Member of Congress does not establish an agency interpretation that is entitled to deference from a court under *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). *See* Defs.' Mem. 26. Kansas refers to the Secretary's letter as an "Opinion" and suggests that it was issued as a formal agency opinion. *See* Kansas Br. 19 ("This is the opinion that many courts have requested be issued to answer the question as to whether the Randolph-Sheppard Act applies to DFA contracts."). That is incorrect; the document in question was simply a letter from the Secretary to a Member of Congress and has no binding effect.

While the Government agrees with SourceAmerica and Lakeview's ultimate conclusion that the arbitration panel erred, some of the more specific arguments made by SourceAmerica and Lakeview to support that conclusion are incorrect. One of their more egregious errors is that in their discussion of the March 2018 letter, SourceAmerica and Lakeview suggest that the Secretary's authority under the Randolph-Sheppard Act is limited to "establish[ing] a priority for the operation of cafeterias on Federal property." Pls.' Reply 9. That is not correct. The Randolph-

Sheppard Act grants the Secretary of Education broad authority to interpret and enforce the provisions of the Act. *E.g.*, 20 U.S.C. § 107a(a).

     **B.**     **If the Court reviews the arbitration decision, the proper remedy is to rule that the Randolph-Sheppard Act arbitration panel erred in its interpretation of the Act and remand the arbitration decision, and there is no basis for the broader injunctive relief requested by the plaintiffs.**

If the Court proceeds with judicial review, it should rule that the Randolph-Sheppard Act arbitration panel erred in its application of the Randolph-Sheppard Act and remand for a corrected arbitration ruling consistent with the Court's interpretation of the law. There is no basis for broader injunctive relief controlling the Army's contracting decisions or any other matters beyond the arbitration decision under review.

The Government explained in its first memorandum that the proper remedy is a remand for a revised decision and that the Court should not issue broader injunctive relief. The plaintiffs argue that any remand order should "direct the arbitration panel to: vacate its prior decision; find that the RSA does not cover the Fort Riley DFA services; require a new arbitration panel for any further substantive proceedings; and permit Plaintiffs to intervene and participate in the remanded arbitration proceedings (if any are required)." Pls.' Reply 26. But an order of that form would be improper—it would simply be an injunction dressed up as a remand order.

The principle behind the rule favoring remand is that Congress has placed primary responsibility for administration of the program in the hands of the agency. The role of the reviewing court is narrow—"simply to identify a legal error and then remand to the agency." *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) (citing *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)); Defs.' Mem. 30. In keeping with that allocation of responsibility, a court generally should not dictate how the agency will correct the errors of law identified by the court or what other proceedings the agency should conduct. *See*

*INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (explaining that remand is the preferred remedy because a reviewing court should not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency" (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943))). In the context of the Randolph-Sheppard Act, Congress has directed that the Secretary of Education is responsible for convening an arbitration, and the arbitration panel is responsible for conducting the arbitration. 20 U.S.C. §§ 107d-1(b), 107d-2(a). The Court should simply explain how the arbitration panel erred and then leave it to the Secretary and the arbitration panel to conduct further proceedings consistent with the Court's legal ruling. It would not be proper for the Court to instruct the Secretary or the arbitration panel how the proceedings on remand should be conducted or to dictate a particular outcome or result. *See Orlando Ventura*, 537 U.S. at 16 (explaining that when a court finds that an agency erred by failing to consider an issue, the court ordinarily should remand to the agency rather than making its own determination).

Injunctive relief against the Army would be particularly inappropriate given that there are no valid claims against the Army. The Army did not issue the arbitration decision and therefore is not a proper defendant with respect to the plaintiffs' claims for judicial review of the arbitration decision. The plaintiffs assert that they also intended to assert independent APA claims against the Army challenging "reliance" by the Army on the arbitration decision and the Army's "failure to award" a contract to Lakeview, Pls.' Reply 26, but those claims were not clearly raised in the plaintiffs' complaint or in the plaintiffs' first summary judgment memorandum, Mem. in Supp. of Pls.' Mot. for Summ. J., ECF No. 67. In any event, neither "reliance" on the arbitration decision nor a "failure to award" a contract is properly subject to challenge under the APA.

The Administrative Procedure Act permits review of "final agency action." 5 U.S.C. § 704. An APA suit must target some "circumscribed and discrete" action by the agency—a "*determination* of rights and obligations, whether by rule, order, license, sanction, relief, or similar action." *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193–94 (4th Cir. 2013) (citation omitted) (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). The APA does not provide a basis for challenging "reliance" on the arbitration decision independent of any specific action. *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (rejecting an APA claim that was not targeted at an "identifiable action or event").

The APA also permits challenges to an agency's "failure to act," 5 U.S.C. §§ 551(13); *see also id.* § 706(1) (permitting relief to "compel agency action unlawfully withheld or unreasonably delayed"). But a claim challenging an agency's failure to act "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law . . . ." *Id.* at 65; *see also Vill. of Bald Head Island*, 714 F.3d at 195; Mem. Op. 18–20, ECF No. 26 ("[A]n action is legally required only if there is a mandatory, statutory obligation that an agency take a specific discrete action."). The plaintiffs' status under the Javits-Wagner-O'Day Act does not grant them a strict right to receive a contract within any specific timetable, so there is no basis for an APA claim. *See infra* pp. 16–17 (explaining the Javits-Wagner-O'Day Act does not guarantee that an authorized supplier will receive a contract); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 742 (E.D. Va. 2008) (noting that a plaintiff seeking to compel agency action must show not only that the agency "has a nondiscretionary duty to act" but also that the agency "has an accompanying duty to [act] within a certain period of time").

In addition, injunctive relief is improper when there is no reason to believe the defendant will engage in the action that would be prohibited by the injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (explaining that injunctive relief is improper "where there is no showing of any real or immediate threat that the plaintiff will be wronged again"); *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011) (noting that an injunction should be no broader than necessary to provide complete relief to the plaintiffs). There is no reason to believe the Army would "rely" on the arbitration ruling if it was set aside by the Court.

**III.   The plaintiffs' other challenges to the arbitration panel ruling should be rejected.**

**A.   The arbitration panel's failure to act on SourceAmerica and Lakeview's requests to participate in the arbitration proceeding was harmless error.**

The arbitration panel's failure to act on the plaintiffs' requests to participate in the proceeding should be disregarded as harmless error. The plaintiffs assert that they were harmed by the arbitration decision. But the harmless error analysis does not turn on whether the plaintiffs were harmed by the arbitration panel's ultimate decision; it turns on whether the plaintiffs were harmed by the *error* under consideration—in this case, the panel's failure to act on their request to participate in the proceedings. *See Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) (examining whether the petitioner was harmed by the erroneous exclusion of evidence in an administrative proceeding, not whether the petitioner was harmed by the ultimate decision). The plaintiffs were not harmed by that error because they would not have significantly added to the Army's presentation, and their participation would not have changed the outcome of the proceeding.

If the Court finds that the arbitration panel's failure to act on the plaintiffs' request was not harmless, then the Court should simply remand so that the arbitration panel can act on the plaintiffs' request. The Court should not instruct the arbitration panel to *grant* the request, since

that would "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)); *see supra* pp. 10–11. The Court should instead allow for a proper administrative determination on the plaintiffs' request. The request might be properly denied, for example, if the plaintiffs' participation were incompatible with "the orderly conduct of public business," 5 U.S.C. § 555(b).

  **B.**  **The Court should not rule on the application of the Javits-Wagner-O'Day Act because there is no basis for doing so in an action for judicial review of a Randolph-Sheppard Act arbitration decision.**

  As explained in the federal defendants' memorandum, the function of the district court in an action for review of agency action is that of an "appellate tribunal." Defs.' Mem. 33. In that role, a reviewing court generally should limit itself to examining whether the agency (in this case, the arbitration panel) erred in its action. The reviewing court generally should not reach issues that were not decided by the arbitration panel and were not even within the scope of the authority of the arbitration panel. *Cf. Ry. Labor Execs.' Ass'n v. ICC*, 859 F.2d 996, 999 (D.C. Cir. 1988) (declining to consider issues concerning application of the Railway Labor Act because the pertinent statute did not confer authority on the agency to decide the issue and the agency had not decided the issue, and consequently there was "no agency disposition on point to review"). Accordingly, the Court should not decide any issues relating to the application of the Javits-Wagner-O'Day Act to the Fort Riley dining facilities.

  While the Court should not examine the application of the Javits-Wagner-O'Day Act at all, the Government notes that the plaintiffs are incorrect when they suggest that the Army is entitled to deference in its interpretation of the Javits-Wagner-O'Day Act. *See* Pls.' Reply 15–16. The Javits-Wagner-O'Day Act does not confer authority on the Army to fill gaps in the Randolph-Sheppard Act or the Javits-Wagner-O'Day Act. The Fourth Circuit in *NISH v. Cohen*,

247 F.3d 197 (4th Cir. 2001), never held or suggested that the Army's interpretation of either the

Randolph-Sheppard Act or the Javits-Wagner-O'Day Act was entitled to deference. *See NISH*,

247 F.3d at 203 n.5 (noting that the Department of Defense was not entitled to deference in

interpretation of the Randolph-Sheppard Act because "there is no deference accorded

interpretation of a statute that agency does not administer" (citing *Shanty Town Assocs. Ltd. v.*

*EPA*, 843 F.2d 782, 790 n.12 (4th Cir. 1988))).

### C.     The plaintiffs' claims of bias in the proceedings should be disregarded because they are outside the scope of the plaintiffs' complaint.

The plaintiffs' claim that the proceedings were infected by improper ex parte

communications and bias should be disregarded because the plaintiffs did not raise any claim of

this kind in their complaint. The two isolated references to the dissenting panel member's

concerns about the "fairness" of the proceeding, Compl. for Declaratory and Injunctive Relief

¶¶ 8, 103,[4] did not provide fair notice that the plaintiffs would be asserting claims of improper ex

parte communications or bias.

The Government's first memorandum also explained that the requirements of § 557 of

the Administrative Procedure Act, 5 U.S.C. § 557, are not applicable to Randolph-Sheppard Act

arbitration proceedings. These formal adjudication requirements are applicable only when the

governing statute specifies that proceedings are to be conducted "on the record after opportunity

for an agency hearing," *id.* § 554(a). That language does not appear in the Randolph-Sheppard

Act, and the Supreme Court has held that a reference to a "hearing" by itself does not trigger the

formal adjudication. *See United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 237–38 (1973).

The plaintiffs argue that the language in the Randolph-Sheppard Act specifying that the Secretary

---

[4] The plaintiffs' memorandum also cites paragraph 26 of the complaint, Pls.' Reply 17 n.5, but that paragraph does not appear to relate to the issues of improper ex parte communications or bias.

"shall convene a panel to arbitrate the dispute" that will "give notice, conduct a hearing, and render its decision," which "shall be final and binding on the parties," should be treated as the equivalent of "on the record after opportunity for an agency hearing." But they offer no support for that argument and fail to show how these terms could put the Randolph-Sheppard Act on different footing than the statute that the Supreme Court considered in *Florida East Coast Railway Co.*

> **D.      The Court should not reach the plaintiffs' due process claim, but if it does consider that claim, the claim should be rejected.**

As noted in the federal defendants' memorandum, the Court should not reach the plaintiffs' Due Process Clause claim unless it has first considered and rejected all of the plaintiffs' statutory challenges. The plaintiffs have not contested that argument. If the Court reaches the due process claim, it should reject the claim.

The plaintiffs have not been deprived of any constitutionally protected property interest. Lakeview has not lost its status as an authorized supplier of services under the Javits-Wagner-O'Day Act; it retains that status. And Lakeview's status as an authorized supplier does not guarantee that Lakeview will receive a Government contract. The plaintiffs argue that the text of the Javits-Wagner-O'Day Act specifies that agencies "shall" procure services from a mandatory source of supply, but the plaintiffs are quoting the statutory language out of context and in a misleading way. The statute provides:

> (a) IN GENERAL.—An entity of the Federal Government intending to procure a product or service on the procurement list referred to in section 8503 of this title shall procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of the Committee and at the price the Committee establishes if the product or service is available within the period required by the entity.

41 U.S.C. § 8504(a). A mandatory source of supply is not guaranteed to receive a contract, because the statute imposes obligations on a Government entity only when it "intend[s] to

16

procure" the product or service and only if the product or service "is available within the period

required by the entity." *Id.* Even if those two conditions are met, the agency may satisfy the

obligation by procuring the product or service from any qualified nonprofit agency. The agency's

obligations are also subject to AbilityOne Commission regulations. Consequently, a mandatory

source of supply might never receive a contract if the purchasing agency decides it no longer

needs the products or services; if the AbilityOne Commission authorizes a different supplier or

more than one supplier; or if either the central nonprofit agency or the AbilityOne Commission

grants a purchase exception, *see* 41 C.F.R. § 51-5.4(a)–(c).

     In its March 2018 opinion, the Court agreed that "these intervening events could prevent

the ultimate award of the DFA services contract," but it found that that did not affect the due

process analysis because "there [was] no indication that any of these events [was] likely to

occur." Mem. Op. 14. The relevant question, though, is not whether it is *likely* that future events

will frustrate the plaintiffs' expectations; it is whether it is *possible* that future events could

frustrate the plaintiffs' expectations. For example, in *C&E Services, Inc. of Washington v.

District of Columbia Water and Sewer Authority*, 310 F.3d 197 (D.C. Cir. 2002), a disappointed

bidder for a government contract asserted that it had a property interest in the contract because

D.C. law required the agency to select the lowest bidder. But the court found the plaintiff did not

have a property interest because D.C. law permitted an agency to cancel a bid process for

"cogent and compelling reasons." *Id.* at 200 (quoting D.C. Code Ann. § 2-303.07). The court

explained:

> WASA's authority to cancel for "cogent or compelling reasons" means that
> submitting the lowest bid does not necessarily translate into winning the contract.
> Instead, cancellation of the bidding hangs over bidders' heads until contracts are
> actually awarded. Because the Constitution's "procedural protection of property is
> a safeguard of the security of interests that a person *has already acquired* in

specific benefits," a Fifth Amendment–protected property interest arises only upon award.

*Id.* (citation omitted) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972)). The court further held that it did not matter whether the agency in fact had a valid "cogent or compelling" reason that would justify cancellation of the bid process under D.C. law. The fact that the law allowed for cancellation was enough to prevent the plaintiffs from claiming a property interest, even if the defendant could not show that cancellation was authorized in the circumstances at hand. *See id.* at 201 ("We may assume that WASA offered no 'cogent or compelling' reason for cancellation in this instance, yet still conclude that WASA's uncontested authority to cancel by providing such a reason defeats C&E's claim of a legal entitlement.").

Similarly, in *Bannum, Inc. v. Town of Ashland*, 922 F.2d 197 (4th Cir. 1990), the plaintiff, Bannum, Inc., challenged a decision by the Town of Ashland that withdrew approval for Bannum to operate a halfway house under contract with the Bureau of Prisons. Bannum argued, in part, that the town's decision violated its due process rights by depriving it of its interest in the contract with the Bureau of Prisons. *See id.* at 199–200. The Fourth Circuit found that the plaintiff's expectation of a contract with the Bureau of Prisons did not amount to a constitutionally protected property interest in part because no contract had been signed and "[t]he Bureau of Prisons *could have* refused to proceed with the contract for some unforeseen administrative reason at any time prior to finalization of the agreement." *Id.* at 200 (emphasis added)). The court did not require the defendant town to show that it was likely the Bureau of Prisons would have pulled out of the contract for reasons other than the town's withdrawal of approval. Indeed, the court appears to have assumed that the town's withdrawal of approval was the only reason the Bureau of Prisons did not finalize the contract. *See id.* at 199 ("The Bureau of Prisons . . . notified Bannum that it would not finalize the contract for operation of the Ashland

facility because the Town of Ashland had withdrawn its requisite approval to have the facility

there."); *id.* at 200 ("Undoubtedly, Ashland's withdrawal of approval led to the Bureau of

Prisons' change of position . . . ."). Similarly, in this case, Lakeview's expectation of a

Government contract was always contingent on future events and never solidified into an

entitlement protected by the Due Process Clause.

Even if Lakeview's expectation of a future Government contract amounted to a

constitutionally protected property interest, the arbitration panel decision has not deprived the

plaintiffs of a contract. The arbitration panel did not mandate or prohibit any specific action by

the Army, and under current Fourth Circuit law it lacked authority to do so. Thus, if the Court

reaches the due process claim, the claim should be rejected.

## CONCLUSION

For the reasons above, the Court should dismiss this case without reaching the merits of

the arbitration decision. If the Court does review the arbitration decision, it should rule that the

arbitration panel erred in ruling against the Army and should remand for a corrected decision

without entering injunctive relief.

Dated: October 9, 2018                    Respectfully submitted,

                                          G. ZACHARY TERWILLIGER
                                          United States Attorney

                                          JOSEPH H. HUNT
                                          Asst. Attorney General, Civil Division

                                          CARLOTTA WELLS
                                          Assistant Director, Federal Programs Branch

                                          JAMES C. LUH
                                          JULIE STRAUS HARRIS
                                          Attorneys, Federal Programs Branch
                                          Civil Division, Department of Justice
                                          1100 L St NW, Room 12018
                                          Washington DC 20530

Phone: (202) 514-4938
E-mail: James.Luh@usdoj.gov

      /s/
_____

LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 9, 2018, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which sent a notification of such filing (NEF) to the following

counsel of record:

Sonia Tabriz
ARNOLD & PORTER KAY SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
Email: sonia.tabriz@apks.com

Jayna Genti
Jonathan Richard Mook
DiMuroGinsberg PC
1101 King Street Suite 610
Alexandria, VA 22314-2956
Telephone: (703) 684-4333
Fax: 703-548-3181
Email: Jgenti@dimuro.com
        Jmook@dimuro.Com

                                         _____/s/_____
                                         LAUREN A. WETZLER
                                         Chief, Civil Division
                                         Assistant United States Attorney
                                         Office of the United States Attorney
                                         2100 Jamieson Ave.,
                                         Alexandria, VA. 22314
                                         Tel: (703) 299-3752
                                         Fax: (703) 299-3983
                                         Lauren.Wetzler@usdoj.gov