1

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF VIRGINIA
2   ALEXANDRIA DIVISION

3   --------------------------------------x
                                          :
4   SOURCEAMERICA, et al.,                : Civil Action No.
                                          :
5                   Plaintiffs,           : 1:17-CV-893
                                          :
6           versus                        :
                                          :
7   UNITED STATES DEPARTMENT OF EDUCATION,:
    et al,                                :
8                   Defendants.           : October 12, 2018
    --------------------------------------x
9
              The above-entitled Motions hearing was continued
10  before the Honorable T.S. Ellis, III, United States District
    Judge.
11
                    A P P E A R A N C E S
12
    FOR THE PLAINTIFFS:
13
              SONIA NASSEHZADEH TABRIZ, ESQ.
14            Craig A. HOLMAN, ESQ.
              Arnold & Porter Kaye Scholer LLP
15            601 Massachusetts Ave NW
              Washington, DC 20001-3743
16
    FOR THE DEFENDANTS:
17
              LAUREN A. WETZLER, ESQ.
18            United States Attorney Office
              2100 Jamieson Ave
19            Alexandria, VA 22314

20            JAMES C. LUH, ESQ.
              U.S. Department of Justice
21            Civil Division, Federal Programs Branch
              2100 Jamieson Ave
22            Alexandria, VA 22314

23  FOR THE INTERVENOR:

24            JONATHAN RICHARD MOOK, ESQ.
              DiMuro Ginsberg
25            1101 King Street
              Suite 610

2

```
 1              Alexandria, VA 22314-2956
     Appearances cont'd:
 2
     FOR THE INTERVENOR:
 3
                PETER A. NOLAN, ESQ.
 4              Winstead PC
                401 Congress Avenue
 5              Suite 2100
                Austin, TX 78701
 6

 7

 8

 9

10

11       OFFICIAL UNITED STATES COURT REPORTER:

12              MS. TONIA M. HARRIS, RPR
                United States District Court
13              Eastern District of Virginia
                401 Courthouse Square
14              Ninth Floor
                Alexandria, VA 22314
15              703-646-1438

16

17

18

19

20

21

22

23

24

25
```

SourceAmerica v. USDOE

3

1      **P R O C E E D I N G S**

2    (Court proceedings commenced at 12:52 p.m.)

3         THE DEPUTY CLERK:  SourceAmerica, et al versus

4    United States Department of Education, et al.  Civil Case No.

5    1:17-CV-893.

6         (Discussion off the record.)

7         THE COURT:  Now, who's here for the plaintiff?

8         MS. TABRIZ:  Good morning, Your Honor.  Sonia Tabriz

9    here on behalf of plaintiff SourceAmerica and Lakeview Center,

10   Inc. with my colleague Craig Holman, who will be arguing.

11        THE COURT:  All right.

12        MS. TABRIZ:  Or afternoon.

13        THE COURT:  Who's here for the defendant?

14        MS. WETZLER:  Good afternoon, Your Honor.  Lauren

15   Wetzler from the United States Attorney's Office.  With me is

16   James Luh from the Department of Justice on behalf of the

17   federal defendants.

18        THE COURT:  All right.  And for the intervenor.

19        MR. MOOK:  Yes.  Jonathan Mook, Your Honor, on

20   behalf of the State of Kansas.  And with me today is Peter

21   Nolan, a member of the bar of the State of Texas whom you

22   admitted pro hac vice for purposes of this case and he will be

23   arguing the matters.

24        THE COURT:  All right.  Thank you.  I'm familiar

25   with the case and with the parties.  What I'm going to do is

─────SourceAmerica v. USDOE─────

4

1  give you a reasonable time to say anything you want to say

2  about your position on this attack on an arbitration

3  conclusion.  And then I think I'm pretty satisfied with what

4  I've seen in the briefs, but see if you can distill what you

5  have to say in ten minutes and be sure you add anything you

6  haven't said that you think is important and emphasize what

7  you have said that you think is dispositive or important.

8          All right.  Let's see, yes.  You're SourceAmerica.

9          MR. HOLMAN:  And Lakeview Center, Your Honor.

10          THE COURT:  You're attacking this arbitration

11  result?

12          MR. HOLMAN:  Yes, Your Honor.

13          THE COURT:  And let me hear first from you and then

14  I'll go to the U.S. and then I'll go to the intervenor.

15          MR. HOLMAN:  We appreciate your time, Your Honor.  I

16  recognize this is the third time that we've been in front of

17  you in this case.  I do know you're familiar with it so I'm

18  not going to belabor the points and I'm happy to take you up

19  on doing this in ten minutes or less.

20          What I really want to focus on here today, probably

21  the biggest development that we've had since the last time we

22  were in front of this Court, is the summary judgment -- the

23  cross motions for summary judgment filing.  And we actually

24  now, having gotten past the motion to dismiss, have seen the

25  positions of the United States, particularly the defendants in

————SourceAmerica v. USDOE————

5

1    this matter, the Department of Education and the army.

2           And what has become crystal clear, as we've pointed

3    out from earlier pleadings, and as this Court would know from

4    the earlier record, the United States actually agrees with us.

5    The RSA does not cover the dining facility attendant services

6    at Fort Riley.  That is now established in this record.  The

7    Department of Education, the Department of the Army, and the

8    plaintiffs are in agreement the DFA does not cover the Fort

9    Riley services.

10          These are -- as the Court knows, the

11   Randolph-Sheppard Act has language in it that relates to

12   operation of vending facilities that has spun out a stream of

13   litigation that Your Honor has now got a case in front of him.

14   We believe the recent decisions in this area have all

15   concluded as has the United States here that DFA services,

16   dining facility attendant services, busboy services,

17   janitorial services do not constitute the operation of dining

18   facility attendants or excuse me, an operation of vending

19   facilities, which involves the delivery of the food.

20          At Fort Riley, military soldiers have come back from

21   the Iraq and Afghanistan wars and are actually delivering

22   those services.  All this contract relates to that the U.S.

23   AbilityOne Commission has put on the Procurement List and

24   designated for Lakeview Center are dining facility attendant

25   services.

─────SourceAmerica v. USDOE─────

6

1          Probably the most significant thing, Your Honor,

2    that has changed since your earlier ruling in this matter, as

3    I've mentioned, is that you now have the position in this

4    litigation of the Department of Education and the Department

5    of the Army and it's an agreement on the substantive issue in

6    this case.

7          The arbitration decision is wrong.  It violates the

8    RSA.  It violates the policy statements that the Department of

9    Education has put out with the army and the U.S. AbilityOne

10   Commission.  It violates the statements that Congress has put

11   out in connection with the 2015 NDA about the meaning of these

12   statutes.  It violates the plain meaning of the statute as far

13   as I'm concerned.

14          We also have a second count, Your Honor, that

15   addresses the Javits-Wagner-O'Day Act.  Before this action

16   even started -- and I want, if I could, before I move away

17   from the RSA -- I do want to mention *NISH v. Cohen*, because

18   it's been briefed back and forth.  It's a Fourth Circuit case

19   that actually deals with the RSA.  What's most interesting to

20   me about *NISH v. Cohen* is it went in front of the Fourth

21   Circuit.  And the Fourth Circuit's ruling in that case was

22   that the Court needed to defer to the position of the army

23   that contracted, procuring agency, as to whether the work

24   involved was covered by the RSA.

25          In this case, the army has consistently from day

—————————SourceAmerica v. USDOE—————————

1  one, the procuring agency, said this work was covered by the

2  Javits-Wagner-O'Day Act not the RSA.  The U.S. AbilityOne

3  Commission, a federal agency, has since day one said this work

4  was conducted by -- it is covered by the Javits-Wagner-O'Day

5  Act, not the RSA.  And now we have the position of the

6  Department of Education announced in this litigation they too

7  agree.

8            The only party that has any relevance to this that

9  suggest that this is actually RSA work, is Kansas.  Every

10  federal government entity, and the plaintiffs all agree this

11  is not RSA work, indeed.  And the Javits-Wagner-O'Day Act,

12  Your Honor, as I've pointed out, by notice and comment

13  rulemaking, not objected to by Kansas, this work was added

14  several years ago now to the Javits-Wagner-O'Day Act.  It is

15  JWOD Procurement List work.  It has been now for several

16  years.

17            I want to touch briefly, Your Honor, on two other

18  issues and then I'm going to take you up on your offer to keep

19  it brief.  Our participation, Lakeview Center and

20  SourceAmerica, as you know, you've heard this before, when the

21  arbitration panel was convened, twice in writing,

22  SourceAmerica and Lakeview Center attempted to intervene in

23  the arbitration proceeding and once in person at the

24  arbitration proceeding.  We have a count in front of Your

25  Honor that makes clear under the Administrative Procedure Act,

—SourceAmerica v. USDOE—

8

1 which this proceeding was conducted under, that we had a right

2 under 555(b) to participate in that action, a statutory right

3 to participate in that action.  The arbitrators never

4 expressed a reason for not allowing our participation, indeed

5 they ignored it.  That alone, if you don't agree with us, on

6 the RSA and the JWOD to the point that you want to actually

7 issue this Court's opinion on that is reason for this

8 arbitration decision to be thrown out in this matter to be

9 remanded.

10         Separately, Your Honor, as we pointed out, the

11 arbitration panel, General Carey, there were three

12 arbitrators.  General Carey, the third arbitrator, wrote a

13 dissenting opinion in this matter where he questioned the

14 fundamental fairness of the arbitration panel.  He did so at

15 the behest of the United States Army which asked to vacate

16 that opinion, both because SourceAmerica and Lakeview were

17 prohibited from testifying despite that they were on the

18 army's witnesses and also attempted to do so on their own

19 behalf; and, because there were improprieties among improper

20 communications, ex parte communications, between Kansas

21 counsel and the -- and the arbitration chair; and, because

22 there were undisclosed relationships between the other two

23 panel members, all of these things led General David Carey

24 retire to question the fundamental fairness of this panel and

25 to recommend that the panel decision be vacated.  It was

——————SourceAmerica v. USDOE——————

9

1   himself to recommend that and declared it fundamentally

2   unfair.  Itself, an extraordinary conclusion.

3           We've pointed out under 557(b) that we have an

4   affidavit in the record, not from us, from the army

5   contracting officer who overheard the ex parte communication

6   that there was indeed an improper ex parte communication that

7   caused the chair of the arbitration panel to reverse her

8   ruling to allow us -- to allow SourceAmerica and Lakeview to

9   testify in this matter.  There was an ex parte communication

10  that took place accounted to by the army contracting officer

11  immediately prior to the arbitration chair changing position

12  on that topic.

13          Again, 557(b), Your Honor, APA is clear on the

14  necessary outcome.  For that reason we request this Court --

15  to these reasons we request this Court to grant our motion for

16  judgment on the administrative record and into the relief

17  we've requested.

18          THE COURT:  What was the relief again, remind me?

19          MR. HOLMAN:  Well, we've actually asked Your Honor

20  to enter a ruling that this work is covered by the

21  Javits-Wagner-O'Day Act, not the Randolph-Sheppard Act, and to

22  vacate the lower decision, and also to enter an injunction

23  preventing the U.S. Army or the Department of Education from

24  filing that decision.  I don't know whether they would or they

25  wouldn't to be candid with you, Your Honor.  But the problem

————SourceAmerica v. USDOE————

10

1    right now with an arbitration decision in place --

2          THE COURT:  Well, I certainly wouldn't enjoin

3    somebody from doing something they say they're not going to

4    do.  All right.

5          MR. HOLMAN:  Well, I mean if they represent that,

6    Your Honor, I will certainly accept it.

7          THE COURT:  Let me go on now.  Who is here on behalf

8    of the United States, that is the army and --

9          And who else are you here for?

10         MR. LUH:  Your Honor, all the federal defendants.

11   That being, the Department of Education, the Department of the

12   Army, the Secretary of the Army, and the Department of Defense

13   and the Secretary of Defense.

14         THE COURT: All right.  Proceed.

15         MR. LUH:  Your Honor, we'll be brief.  I think you

16   noted our positions are laid out in our briefs.

17         First of all, I should note that we did ask the

18   Court to revisit some of the threshold defenses we raised at

19   the motion to dismiss stage that were rejected by the Court.

20   We're happy to answer questions about those, but otherwise our

21   position on those are pretty clear in the briefs and we -- we

22   don't feel any need at this point to rehash them further in

23   this proceeding.

24         Going to the merits, Your Honor.  We agree with

25   the -- at least the ultimate conclusion presented by

————SourceAmerica v. USDOE————

11

1   SourceAmerica and Lakeview that the arbitration panel

2   misapplied the Randolph-Sheppard Act.  We believe that the

3   army --

4          THE COURT:  Well, they didn't misapply it.  Your

5   argument is that it wasn't applicable.

6          MR. LUH:  Exactly, Your Honor.

7          THE COURT:  That's different from misapplying it.

8          MR. LUH:  Certainly, Your Honor.  To the extent that

9   there's a distinction between misapplying and misinterpreting,

10  the scope of the statute we are arguing that the arbitration

11  panel misinterpreted the Randolph-Sheppard Act when it

12  concluded that the Randolph-Sheppard Act covered the dining

13  facility attendant services at Fort Riley.

14         THE COURT:  All right.  Go on.

15         MR. LUH:  The arbitration panel essentially ruled

16  that or they interpreted the Randolph-Sheppard Act as applying

17  to serve any contract or services pertaining to or integral to

18  operation of the cafeteria.  But the terms of the

19  Randolph-Sheppard Act extend the Randolph-Sheppard Act

20  priority to contracts for operation of vending facilities or

21  operations of cafeterias by the contractor.  And we believe

22  that's -- that statutory phrasing does not encompass a

23  contract for ancillary services delivered in support of the

24  cafeteria operation, at least where the contractor is not

25  involved in any -- is not directly involved in any service of

—SourceAmerica v. USDOE—

1    or preparation of food.

2           Your Honor, the arbitration panel also found

3    that the army had violated the provision in Section 107(b) of

4    the Randolph-Sheppard Act requiring advanced view by the

5    Secretary of Education of any limitation on the placement or

6    operation of vending facilities.  We believe that provision

7    did not apply because that provision is aimed at restricting

8    agencies from imposing unjustified restrictions on the

9    operation of vending facilities and not on ensuring the

10   continuation of contract relationships with Randolph-Sheppard

11   Act vendors.  So we believe that that provision was

12   inapplicable to the army's actions in dispute in the

13   arbitration.

14          Finally, Your Honor, we believe that the arbitration

15   panel erred when it found that the army's actions violated the

16   John Warner National Defense Authorization Act provision, the

17   so-called no-poaching provision.  Because if -- the terms of

18   that no-poaching provision clearly indicate that it does not

19   actually expand the terms of the Randolph-Sheppard Act or

20   extend it to situations that don't fall -- that didn't fall

21   within the terms of the Randolph-Sheppard Act before the

22   provision was enacted.  So there's no basis for reading the

23   no-poaching provision to apply the Randolph-Sheppard Act if

24   there was no -- if -- activities that weren't within the

25   coverage of the Randolph-Sheppard Act before the provision was

—SourceAmerica v. USDOE—

1   enacted.

2          We do, Your Honor -- we -- so, Your Honor, we agree

3   with the ultimate conclusion that the panel erred, but we --

4   we certainly disagree with SourceAmerica and Lakeview on a

5   number of key issues.  The most important of which is the

6   relief that should be granted here.  As we've argued in our

7   briefs, the appropriate remedy here is remand for a corrected

8   decision and injunctive relief should not issue at all.

9          THE COURT:  Remand for whom to make a decision?

10         MR. LUH:  Remand of the decision to the Secretary of

11  Education who would then initiate any necessary proceedings at

12  the agency level.  There would be a remand to the Department

13  of Education because the Secretary of Education is responsible

14  for convening arbitration panels and has an overall management

15  responsibility of the arbitration process in that respect.  So

16  the remand would be to the Department of Education.

17         Your Honor, the plaintiffs, having so much disputed

18  that remanded the appropriate remedy, and in fact I believe

19  they even mentioned remand as the outcome here, but they're

20  also seeking injunctive relief or they're seeking language in

21  the Court's remand order that would direct the agencies or

22  the -- the Department of the army or the Department of

23  Education and any further proceedings.  We believe that's

24  improper, Your Honor.

25         The ordinary remedy again is remand -- is a remand

1   that permits the agency to decide it exactly how to implement

2   the Court's legal ruling and there's not a basis here.

3   There's no extraordinary circumstances that would justify a

4   continued supervision in the form of an injunction.

5         Your Honor, we also disagree that the Court should

6   reach any issues concerning the Javits-Wagner-O'Day Act.  As

7   the Court explained in its March 2018 opinion on pages 16 and

8   17, the authority of the Randolph-Sheppard Act arbitration

9   panel is quite narrow and is limited to deciding

10  Randolph-Sheppard Act issues and the Randolph-Sheppard Act

11  arbitration panel doesn't have general jurisdiction to decide

12  issues under other statutes.  And accordingly, this Court on

13  review should not visit the effects of other statutes.

14        As -- as for the arguments that the arbitration

15  panel erred in failing to act on the request by Lakeview and

16  SourceAmerica to participate in the proceeding, that error was

17  harmless because it's clear that SourceAmerica and Lakeview

18  would only have reiterated the legal arguments that were

19  already made by the army and that -- and those legal arguments

20  pertain to the Javits-Wagner-O'Day Act, which the arbitration

21  panel did not rule on and under Fourth Circuit law did not

22  have authority to rule on.

23        The plaintiff's also have raised this new claim

24  regarding bias in the proceedings or improper ex parte

25  communications.  We don't believe that those claims were

1    properly raised in the plaintiff's complaint, nor were they

2    discussed at length -- I'm sorry -- we don't believe they were

3    properly raised in the plaintiff's complaint.  They were

4    introduced for the first time in the plaintiff's summary

5    judgment brief.  And in any event we believe the claims are

6    legally insufficient because Section 557, the APA provision

7    controlling formal adjudication, is not applicable in this

8    case because the statute does not specify proceedings on the

9    record after opportunity for an agency hearing, which is the

10   necessary language that must appear in the statute before

11   Section 557 becomes applicable.

12          THE COURT:  I'm sorry would you say that last again?

13   Why is it that those ex parte communications are not covered

14   by the APA?

15          MR. LUH:  Your Honor, the -- the plaintiffs are

16   relying on the ban on ex parte communications under 5 U.S.C.

17   557, which specifies requirements -- certain additional

18   procedural requirements that must be followed in formal

19   adjudication as opposed to informal adjudication.  And the

20   Supreme Court has explained, in the case I think we cited is

21   *United States v. Florida East Coast Railway Company*.  The

22   Supreme Court has explained that these additional

23   requirements, these special formal adjudication requirements

24   are applicable only when the statute specifies that the --

25   that the agency is to conduct proceedings on the record after

————SourceAmerica v. USDOE————

16

1   opportunity for an agency hearing or use his words that are

2   equivalent to that language.  And the Court in *Florida East*

3   *Coast Railway* found that the statutory phrase, after a

4   hearing, did not do it, did not trigger those 557

5   requirements.

6         And we believe here the Randolph-Sheppard Act does

7   not trigger the 557 requirements and the plaintiffs haven't

8   pointed to any case law that would suggest that they -- that

9   it does trigger those requirements.

10        Even if those -- finally, if those requirements are

11  applicable, the ex parte communications would provide a basis

12  for vacating a decision only if they irrevocably taint the

13  decision.  And, Your Honor, as described in the plaintiff's

14  briefs and in the affidavit that they rely on from the army

15  contracting officer, these -- the limited ex parte

16  communications that occurred, according to the affidavit,

17  certainly do not rise to the level of tainting the proceeding

18  that they simply rehash concerns that had already been made on

19  the record by the -- the attorneys for the parties and the

20  proceeding.

21        Your Honor -- finally, Your Honor, with respect to

22  the procedural due process claim, as we explained in our

23  initial brief, the Court should not reach that claim because

24  -- unless it first rejects all of the plaintiffs' statutory

25  arguments, because a Court generally should not reach

———SourceAmerica v. USDOE———

17

1   constitutional issues unless it's absolutely necessary.  And

2   the plaintiffs haven't disputed that principle.

3         However, if the Court does reach the due process

4   claim, we believe the claim should be rejected because the

5   plaintiffs here have not asserted a -- a constitutionally

6   protected property interest in either receipt -- in the

7   receipt of a government contract.  And they also haven't

8   alleged they've been deprived of any constitutionally

9   protected property interest either in their status of -- as --

10  in their status as authorized providers of the services under

11  the Javits-Wagner-O'Day Act.  The plaintiffs still has that

12  status and they still conceivably could get a contract.

13        THE COURT:  Thank you.  All right.  The intervenor.

14        MR. NOLAN:  Thank you, Your Honor.

15        I bring a somewhat unique perspective to this case

16  --

17        (A pause in the proceedings.)

18        (Discussion off the record.)

19        THE COURT:  Go ahead, sir.

20        MR. NOLAN:  I was saying I bring a unique

21  perspective to this case.  I'm the only one who's performed KP

22  in the mess halls at Fort Riley.  It was almost 50 years ago,

23  but I have a little perspective on this.

24        And I think we start -- I'm going to talk about the

25  application of the Randolph-Sheppard Act --

─────────SourceAmerica v. USDOE─────────

18

1        THE COURT:  Well, it couldn't have been 50 years

2   ago.  You're not 70 years old.  You couldn't have been 20

3   years old when you did it.

4        MR. NOLAN:  I'm 68.

5        THE COURT:  I see.  Well you're hiding that.

6        MR. NOLAN:  I'm sorry, Your Honor.

7        THE COURT:  Your chemical enhancements need to be

8   revealed.

9        MR. NOLAN:  I passed the drug test on the way in.

10        THE COURT:  All right.  Go ahead, sir.

11        MR. NOLAN:  I think we need to start with the

12   purpose of the Randolph-Sheppard Act.  And it is to expand

13   opportunities for the blind.  Everybody agrees with that.

14        The 1974 Senate report, which counsel for the

15   defendants brought to the Court's attention, explain that back

16   in 1974 there were amendments, which were passed because of

17   the singular insensitivity of the Department of Defense to the

18   concept that it was supposed to work with the Department of

19   Education and the state licensing agencies to actually create

20   opportunities for the blind, not to eliminate opportunities

21   for the blind.

22        The 1974 amendments to the Randolph-Sheppard Act

23   expanded these opportunities, specifically to cafeteria

24   services.  And the definition of vending facility and the

25   Randolph-Sheppard Act includes the sale of services

────────SourceAmerica v. USDOE────────

19

1  specifically.  This aligns with what the Department of Defense

2  maintains.  They maintain that all civilian operators of

3  cafeteria contracts provide only some of the services that

4  support the operations of military dining facilities.

5        The Department of Defense points out that they

6  always maintain responsibility for certain services and all

7  cafeteria contracts, whether they are the full food service

8  contracts or the DFA contracts we're talking about today.  And

9  I think another point -- important point is is that this Fort

10  Riley DFA cafeteria contract was for all of the cafeteria

11  services supporting the operation of the Fort Riley mess

12  halls, which were not provided by the army.  It was the entire

13  cafeteria contract that was led to civilian companies.

14        These services -- the evidence at the hearing were

15  these services were not ancillary to the operation of the

16  dining facilities contract, they were integral to the

17  operation of the dining facilities contract.  That was the

18  evidence at the arbitration.

19        The evidence at the arbitration were that these

20  services are classified by the Department of Defense as dining

21  facility services.  And the evidence at the arbitration was

22  that dining facility and cafeteria mean the same thing.  So

23  the army -- the Department of Defense classified these --

24        THE COURT:  Just a moment.  Mr. Flood, can you tell

25  the folks outside that it's been delayed.  I think they're

————SourceAmerica v. USDOE————

20

1    here --

2              (Discussion off the record.)

3              THE COURT:  Go ahead, sir.

4              MR. NOLAN:  So it's the Department of Defense that

5    maintains that this is a cafeteria contract providing

6    cafeteria services integral to the cafeteria operation.  And

7    in fact, the employees providing the services are classified

8    as food employees by the Department of Defense.  The evidence

9    at the hearing is also that the Department of Defense admitted

10   it may have allowed state licensing agencies to contract for

11   DFA contracts in the past and there was no allegation that

12   these DFA contracts run by blind managers were somehow

13   violated the law.

14             And Kansas actually was operating a hybrid DFA

15   contact at Fort Riley for years prior to this solicitation

16   we're talking about.  It was DFA plus, I think, some potato

17   peeling and maybe a contingency cook.  And DOD maintains that

18   such contracts are subject to the Randolph-Sheppard Act.

19             Now, the Department of Defense wants to eliminate

20   the provision of the Randolph-Sheppard Act to DFA contracts,

21   which they had historically allowed and to these hybrid DFA

22   contracts, which Kansas historically allowed.  The majority of

23   the arbitration panels, which have addressed this issue, have

24   found that the Randolph-Sheppard Act applies to DFA cafeteria

25   services.  Many courts have agreed with that assessment.  Some

1  courts have not, but many of them have not directly addressed

2  the issue.  But what all these tribunals have in common, or

3  almost all of them, is they have all requested or suggested

4  that the Department of Education, not attorneys for the army,

5  but that the Department of Education opine on the application

6  of the Randolph-Sheppard Act to DFA cafeteria services.  And

7  the Department of Education has, and its opinion is clear and

8  authoritative that the Randolph-Sheppard Act --

9           THE COURT:  I'm sorry.

10          (Discussion off the record.)

11          THE COURT:  Go ahead, sir.  You may complete your

12  argument.

13          MR. NOLAN:  The Department of Education has spoken.

14  We don't have to -- we don't have to go through a mouthpiece.

15  The Department of Education has spoken.  You have that letter

16  from Secretary DeVos saying that the Randolph-Sheppard Act

17  applies to these DFA contracts and she cites as an example of

18  an arbitration panel which got it right the very arbitration

19  panel who you are reviewing today.

20          THE COURT:  But is that contrary to what counsel has

21  said today?  Well, let me ask right now so that I'm clear

22  about it.

23          Do you know what letter he's referring to, sir?

24          MR. LUH:  Your Honor, I believe he's referring to

25  the letter that was reproduced at ECF 43-1.  It's a letter

——————SourceAmerica v. USDOE——————

22

1  from Secretary DeVos to --

2         THE COURT:  All right.  Is your position today on

3  behalf of the army and the Department of Education, especially

4  the Department of Education, that the Randolph-Sheppard Act

5  applies or doesn't apply?

6         MR. LUH:  To the army services at Fort Riley, sir?

7         THE COURT:  Yes.

8         MR. LUH:  Your Honor, the position is of the United

9  States is that the Randolph-Sheppard Act does not apply to the

10  services -- the Fort Riley services at issue.

11        THE COURT:  Well, does the letter say otherwise?

12        MR. LUH:  The letter does not say otherwise, Your

13  Honor.  The letter does cite the Kansas decision that's under

14  review here.  And it certainly does so in a way that seems to

15  be -- to look favorably on the decision, but as we've

16  explained in the briefs, Your Honor, this letter does not

17  adopt the analysis of the -- of the Kansas arbitration panel

18  in any formal matter that would establish a definitive

19  interpretation by the Secretary of Education or the Department

20  of Education pursuant to its congressionally and delegated

21  authority.

22        THE COURT:  Does the Secretary say that the RSA is

23  applicable or inapplicable?

24        MR. LUH:  I don't think -- she makes a statement

25  about whether it's applicable to the Fort Riley services, Your

1   Honor, in the letter.

2           MR. NOLAN:  Your Honor, may I read a -- may I borrow

3   this letter and read the portion which I think answers your

4   question directly?

5           THE COURT:  All right.

6           MR. NOLAN:  What she says specifically is that the

7   education department believes that the Randolph-Sheppard Act

8   priority applies to both types of cafeteria contracts.  And

9   she's referring to full food service and DFA.  I don't know

10  how much more direct she could be.

11          She says, "An arbitration panel recently convened to

12  consider a dispute under the Randolph-Sheppard Act concerning

13  a cafeteria at Fort Riley Kansas.  The panel concluded that

14  where the tasks to be performed by a contractor for DFA

15  services, includes tasks that constitute an integral element

16  of providing food services at a military cafeteria facility or

17  pertain to the operation of a cafeteria, or tasks that without

18  which the cafeterias would not be able to function..."

19          And those are all facts.  These are all in quotation

20  marks found at this very arbitration, such contracts.

21          "...fall within the definition, included in the

22  Randolph-Sheppard Act and it's implementing regulations and

23  are entitled to Randolph-Sheppard Act priority when awarding

24  --

25          THE COURT:  Now, are you taking a position on behalf

—————SourceAmerica v. USDOE—————

24

1    of the Department of Education that is contrary to that

2    letter?

3           MR. LUH:  Your Honor, not contrary to the letter,

4    because the letter does not take a position that the -- that

5    the Fort Riley services are covered by the Randolph-Sheppard

6    Act, but, yes we are taking the position, as the United

7    States, that the Fort Riley services at issue in this case are

8    not subject to the Randolph-Sheppard Act.  As --

9           THE COURT:  I'm sorry, but I seem to be

10   understanding you as saying that you don't agree with the

11   Secretary of Education.

12          MR. LUH:  Your Honor, I don't think that -- again, I

13   don't think there's a disagreement here.  I think that the --

14   that the position that we've stated is consistent with the

15   Department of Education's statements in the letter that

16   perhaps there could be some dining facility attendant services

17   that would be subject to the Randolph-Sheppard Act.  I don't

18   think that there's a clear and considered conclusion in the

19   Secretary of Education's letter that in fact the services at

20   issue in the Kansas case --

21          THE COURT:  Does she refer in her letter to the

22   arbitration?

23          MR. LUH:  Yes, Your Honor, it does cite the

24   Kansas --

25          THE COURT:  She cites it approvingly?

SourceAmerica v. USDOE

25

1        MR. LUH:  Your Honor --

2        THE COURT:  You don't nod or shake your head.  It

3   has the effect of interrupting the speaker.  It's rude.

4   Remain dispassionate.

5        MR. NOLAN:  I'm sorry.  I will.

6        THE COURT:  Go ahead, sir.

7        MR. LUH:  Your Honor, it does cite approvingly the

8   Kansas arbitration decision.  But, again, it says not do so in

9   a manner that makes clear that the Secretary is exercising her

10  congressionally delegated authority to interpret the

11  Randolph-Sheppard Act --

12       THE COURT:  You need to go back -- because I'm going

13  to have it typed up -- you need to go back and read this and

14  ask yourself whether that makes any sense at all, because

15  right now it doesn't make sense to me.  But I'm going to read

16  it again.  I think she says X and you're saying not X.

17       Now, I'll look at it carefully, but maybe you should

18  get something from the Secretary of the Education that says no

19  I didn't mean what it think -- what you think it means, the

20  plain language.  It does sound like its approving the -- the

21  judgment of the -- of the panel.

22       MR. LUH:  Your Honor, respectfully, in addition to

23  whether there's an approval of the conclusion of the or the

24  interpretation of the Kansas panel, which I think is a

25  disputable point, but in addition to that issue there's a

—SourceAmerica v. USDOE—

1   secondary issue of whether at that point in the

2   interpretation, the Secretary is actually exercising her

3   congressionally delegated authority to interpret the

4   Randolph-Sheppard Act.

5           THE COURT:  Oh, well, now you're making something

6   clearer.  Don't nod or shake your head.

7           MR. NOLAN:  I --

8           MR. LUH:  As we --

9           THE COURT:  What I think you're now saying is that

10  you don't agree with the Secretary.  She acted ultra vires.

11          MR. LUH:  Your Honor, no, we're not saying --

12          THE COURT:  Let me ask you something.  You don't

13  have to answer this, but I'm curious.  In preparing for this

14  argument, did you consult with the Secretary of Education on

15  the position to be taken?

16          MR. LUH:  Your Honor, the -- the United States --

17          THE COURT:  Is that a yes or a no?

18          MR. LUH:  We are presenting that --

19          THE COURT:  I'm sorry, is that --

20          MR. LUH:  Not personally with the Secretary herself,

21  Your Honor.

22          THE COURT:  Did you consult with somebody in

23  authority at the Department of Education?

24          MR. LUH:  Yes, Your Honor.

25          THE COURT:  And was this -- at what level, assistant

—SourceAmerica v. USDOE—

27

1  secretary, deputy?

2          MR. LUH:  Your Honor, we -- I'd prefer not to

3  discuss --

4          THE COURT:  All right.  Let me --

5          MR. LUH:  -- attorney-client communications.

6          THE COURT:  I've heard enough today.  But let me

7  tell you, quite frankly, I'm disturbed by this.  I look at

8  this letter in a commonsensical determination or understanding

9  of what this letter says seems to be at odds with what you're

10 conceding on behalf of the Secretary of Education.  And it

11 seems to me that that requires clarification.  So I'm going to

12 require that you submit to the Court by Wednesday of next week

13 a pleading that says you are representing to the Court that

14 you -- that the Secretary of Education agrees with the

15 position you're now taking.

16         Is that clear?

17         MR. LUH:  Your Honor, we understand the order.  The

18 Department of Justice represents the United States in

19 litigation and the Department of Justice reaches those

20 positions in consultation with the effected agencies.

21         THE COURT:  So you didn't consult with anybody at

22 the Department of Education?  You consulted with somebody at

23 DOJ.

24         You're a -- you're an assistant U.S. Attorney, is

25 that correct?

————SourceAmerica v. USDOE————

28

1           MR. LUH:  Your Honor, I have --

2           THE COURT:  I'm sorry.  Are you an assistant U.S.

3   Attorney?

4           MR. LUH:  No, Your Honor, I'm not.  I --

5           THE COURT:  What is your position?

6           MR. LUH:  I'm a senior trial counsel in the civil

7   division at the Department of Justice, at main justice.

8           THE COURT:  Did you consult, in preparing for this

9   argument, with an official at the Department of Education?

10  You've said --

11          MR. LUH:  Yes, Your Honor.  And again, the

12  department -- every agency has processes for consulting with

13  the Department of Justice in litigation and we --

14          THE COURT:  You've been here today -- enough.

15  You've been here today, you've represented that the Department

16  of Education now agrees with the plaintiff as to whether the

17  RSA applies or not, is that correct?

18          MR. LUH:  Your Honor, there are -- Your Honor, there

19  may be differing positions within the -- the government among

20  agencies in terms of legal issues.  The --

21          THE COURT:  Are you -- am I now hearing this "deep

22  state" sort of argument?

23          MR. LUH:  The Department of Justice presents the

24  United States unified position in litigation.

25          THE COURT:  I don't think -- I don't know who the

—SourceAmerica v. USDOE—

```
 1   Secretary of Education is, but I doubt seriously that she
 2   would say -- I think it's a woman.  I doubt seriously she
 3   would say the Department of Justice speaks for me.
 4             MR. LUH:  Your Honor --
 5             THE COURT:  That's what you're saying.
 6             MR. LUH:  Your Honor, the Department of Justice does
 7   speak for the Secretary in this litigation.
 8             And again, Your Honor --
 9             THE COURT:  No, they have a lawyer here, but that
10   lawyer is representing what the Secretary or the Department of
11   Education says.  And you've got to -- I'm going to stick to my
12   order.  Submit something that says that the Secretary of the
13   Department of Education agrees with the concession you have
14   made here today, which is that the RSA does not apply.  Set it
15   out -- I'll set it out in some detail and I want to know what
16   the Secretary of the Department of Education says, not what
17   the Department of Justice says, because the Department of
18   Justice is not the party.  The party is the Secretary of
19   Education.
20             Now, to be sure, the Department of Justice can
21   provide representation for the secretary, but the Department
22   of Justice can't do what it wants to do.  Its got a client.
23             MR. LUH:  Your Honor, the real party in interest is
24   the United States and the United States is the client.
25             THE COURT:  You can't come in here and tell me what
```

──────SourceAmerica v. USDOE──────

30

1   the Department of Education says because in somebody's view, I

2   don't know whose view, the United States says so and so.

3          Do what I say.  I'll take this matter under

4   advisement, but I don't think a fair-minded person can take

5   what you've said today in conceding about the RSA to be

6   consistent with that letter.

7          MR. LUH:  Your Honor, I understand the order and

8   will comply with the order.  I would like to, however, make

9   the point that again this letter is not in a form of a formal

10  opinion expounding an interpretation of the --

11         THE COURT:  So now you're saying the Secretary of

12  Education didn't mean what she said?

13         MR. LUH:  Your Honor, it's not --

14         THE COURT:  It doesn't have the authority to what

15  she said -- to say what she said.

16         MR. LUH:  No, Your Honor, what we're saying here is

17  that the letter was a communication to a member of Congress

18  following up on a conversation that the Secretary had with a

19  member of Congress.  This is not guidance posted on the agency

20  website in terms of how the --

21         THE COURT:  Well, all right.  I think that's a point

22  well taken, but before you come in here and make a statement

23  about this is what the Department of Education says and

24  there's this letter, I'm not moved very much by, well, it's

25  just a letter to a congressman.  I want to get it straight.

—————SourceAmerica v. USDOE—————

31

1          And I'm not moved by the notion that you've

2    discussed this with somebody in the Department of Justice.

3    That's not good enough.  As a lawyer, which you-all are, the

4    Department of Justice is a lawyer for a client.  The client is

5    the secretary of the Department of Education.  You have to

6    consult with the client if you're going to make concessions.

7          MR. LUH:  And, Your Honor, we have, again, consulted

8    with the Department of Education which speaks for the

9    Secretary.  But, Your Honor, again --

10          THE COURT:  You want to tell me who --

11          MR. LUH:  I think we're getting a bit off track

12    because --

13          THE COURT:  Just a moment.  When I start, you stop.

14          MR. LUH:  Certainly, Your Honor, I didn't realize

15    that you started.  Sorry.

16          THE COURT:  Do you want to tell me what the level is

17    of the person you consulted with at the Department of

18    Education?

19          MR. LUH:  I'd prefer not to do that, Your Honor.

20    Again, it's a matter within the government in terms of how we

21    prepare litigation.

22          THE COURT:  Well, obviously, I'm suggesting that you

23    consulted with somebody who doesn't have the authority to tell

24    you what they told you given this letter.

25          MR. LUH:  Your Honor, I don't -- I would not say

───────SourceAmerica v. USDOE───────

32

1   that the -- that the persons we spoke with lacked authority to

2   speak on --

3         THE COURT:  Of course you wouldn't.  You believe

4   otherwise.  And you want me to believe otherwise, but I'm

5   faced here with a letter that says something that seems at

6   odds with the representation that you have made on behalf of

7   the Department of Education.  And you've told me, well, you

8   shouldn't take the letter as such because it's not formal

9   rulemaking, et cetera, et cetera.  But, it's a letter signed

10  by the Secretary of the Department of Education and I find

11  that troubling.  And it ought to be resolved in some sensible

12  way and I'm offering you a way to do that.

13        Now, there are other arguments that you've made

14  about the letter.  About it really doesn't say exactly that

15  and so forth and so on.  And, yes, those are all points that I

16  understand you can make, but it doesn't erase the fact that I

17  have this letter and it is contrary, reasonably contrary, to

18  the representation you've made.

19        MR. LUH:  I understand your concerns, Your Honor,

20  and I also understand the order.  The only additional point I

21  would make, again, is to reiterate that this is the position

22  of the Department of Education in litigation which is

23  determined by the Department of Justice, the Attorney General

24  under 28 U.S.C. 515.  The -- it's the Department of Justice

25  that represents agencies in litigation and determines the

─────SourceAmerica v. USDOE─────

33

1    position of the United States.

2              THE COURT:  And the Secretary has nothing to say

3    about it?

4              MR. LUH:  Again, Your Honor, the -- the Department

5    of Justice, in presenting the position of the United States,

6    works closely with the agencies involved.

7              THE COURT:  All right.  And if there's a

8    disagreement between the agency head, the Secretary of the

9    Department and the Department of Justice, does the Department

10   of Justice prevails?

11             MR. LUH:  I -- Your Honor, I don't know what whether

12   --

13             THE COURT:  I don't think you do either.  I've heard

14   enough today.

15             It's important to know whether you say the United

16   States agrees that the RSA doesn't apply here and you say the

17   Department of Education agrees with that and the Department of

18   Justice rules on this.  Perhaps.  I frankly have not had that

19   issue.  But to say that the Secretary of Education agrees with

20   what you've said today when I see this letter, seems to me, to

21   be ignoring what the letter says.

22             All right.  I will issue the order.  Yes.

23             MR. NOLAN:  Your Honor, can I just finish the

24   thought I was in the middle of?

25             THE COURT:  You've got about a minute.

—SourceAmerica v. USDOE—

34

1          MR. NOLAN:  A minute will be fine.

2          THE COURT:  All right, do so.

3          MR. NOLAN:  I simply wanted to point out what the

4   Fourth Circuit said about the very point you're talking about.

5   And the Fourth Circuit said in the *NISH v. Cohen* case, when as

6   here, an agency such as the Department of Education is charged

7   with implementation of a statute, its policy's decisions are

8   decided are entitled to deference.

9          And they follow it up by saying, "This fact is

10  significant underscoring the point that the Department of

11  Defenses role in implementing the Randolph-Sheppard Act is

12  primarily to follow the decisions of the Department of

13  Education.  It is the Department of Education's administration

14  of the Randolph-Sheppard Act that is authorized by statute and

15  thus entitled to deference."

16         THE COURT:  All right.  Yes.

17         MR. HOLMAN:  Your Honor, I apologize, but having not

18  had an opportunity to respond to that, I just want to take up

19  -- I'll be very brief.  I do want to touch on a few points.

20         THE COURT:  No, it's way past the time.

21         MR. HOLMAN:  I understand, Your Honor.

22         THE COURT:  Two minutes.

23         MR. HOLMAN:  Yes, thank you.

24         First of all, Mr. Nolan hasn't talked about the

25  source of this letter.  I think it's important, Your Honor, to

———SourceAmerica v. USDOE———

35

1  understand that this is a letter that was obtained -- it's not

2  a public letter -- this is no doubt Mr. Nolan went through his

3  congressional representative and had a --

4           THE COURT:  It doesn't matter.  Did she say it or

5  did she not?  She --

6           MR. HOLMAN:  Exactly, Your Honor.  If she did say

7  it, was she intending to do it in a regulatory capacity.

8           THE COURT:  All right.  He's going to be able to

9  tell me next week in some form that's reliable, did you mean

10 it when you said it.

11          MR. HOLMAN:  I have no objection to that, Your

12 Honor.  I just wanted to point out that this is a letter that

13 was obtained through a congressional office and a constituent

14 no doubt.  There was no public process in this.  Nobody had --

15          THE COURT:  He's already said that.

16          MR. HOLMAN:  Okay.  Your Honor, the other point --

17 the other point I want to make clear about *NISH* that was just

18 brought up --

19          THE COURT:  None of that changes that she said what

20 she said in the letter.

21          MR. HOLMAN:  I understand, Your Honor.  What we came

22 -- to be clear, we came into this case, I didn't know what the

23 Department of Education point of view is.  I knew what the

24 U.S. AbilityOne Commission position was, I knew what the

25 army's was.

—SourceAmerica v. USDOE—

36

1           THE COURT:  I don't care what you knew when you came

2    into the case.

3           MR. HOLMAN:  Well, I understand that.  Your Honor,

4    what I'm trying to say is that there are numerous agencies

5    involved here, which the Department of Education is one and I

6    hope the Court does not lose the thread.

7           I don't care whether the Department of Education

8    comes out that time next week because we're right.  The U.S.

9    AbilityOne Commission has also looked at this.

10          THE COURT:  What about Fourth Circuit's statement

11   that they are -- their policy is primary?

12          MR. HOLMAN:  I think that -- I think Mr. Nolan

13   misinterprets that.  Indeed, Your Honor, the Fourth Circuit

14   defers to the United States Army's determination in *NISH*.  And

15   if you wanted to see what the --

16          THE COURT:  All right.  Look, enough.

17          MR. HOLMAN:  Yes, Your Honor.

18          THE COURT:  By Thursday of next week, you may each

19   file further briefs not to exceed ten pages addressing this

20   letter and I'll not enter an order, but I'll require -- I'll

21   simply state that and the government will have to include in

22   theirs something that tells me that that is the Secretary of

23   Education's view.  That is the decision that the RSA applies

24   or the RSA doesn't apply.

25          All right.  Anything else?

SourceAmerica v. USDOE

1          MR. HOLMAN:  Nothing, Your Honor.

2          THE COURT:  And you can say simply that the -- the

3    Secretary of Education has been consulted specifically about

4    this and takes a specific view.  Anything else?

5          MR. HOLMAN:  Nothing, Your Honor.  Thank you.

6          THE COURT:  Court stands in recess.

7

8              **(Proceedings adjourned at 1:44 p.m.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF REPORTER

2

3              I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Motions

7    hearing in the case of the **SOURCEAMERICA, et al., versus**

8    **UNITED STATES DEPARTMENT OF EDUCATION**, Civil Action No.

9    1:17-CV-893, in said court on the 12th day of October,

10   2018.

11             I further certify that the foregoing 38 pages

12   constitute the official transcript of said proceedings, as

13   taken from my machine shorthand notes, my computer realtime

14   display, together with the backup tape recording of said

15   proceedings to the best of my ability.

16             In witness whereof, I have hereto subscribed my

17   name, this October 16, 2018.

18

19

20

21   _____
     Tonia M. Harris, RPR
22   Official Court Reporter

23

24

25

                                                              38